FILED rec'd
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 19 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

MICHAEL FLEMING,

        Plaintiff,

-against-

JOHN B. MATTINGLY, Commissioner, Administration for Children's Services; MTONYA FLECHER, Child Protective Specialist, Administration for Children's Services; MICHELLE MULLINS, ECS/Unit 576, Administration for Children's Services; DANNY HERNANDEZ, Police Officer; RONALD LIAUTAUD, Police Officer; GEORGE A. FLORES, Administration for Children's Services; JEFFREY AUGUSTIN, Police Officer; LENO ISABEL, Police Officer; EON THOMPSON, Police Officer; KEECHIPETRONILLA SIMMON-EDUGHE, Agent, Administration for Children's Services; ANNETTE SPELLEN, Agent, Administration for Children's Services; LISA POLLANAIS, Agent, Administration for Children's Services; NEW YORK CITY; DETECTIVE TOSI, Police Officer; SERGEANT MURPHY, Police Officer,

        Defendants.

08-CV-3074 (ARR) (LB)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

------------------------------------------------------------------

ROSS, United States District Judge:

      Michael Fleming ("plaintiff") brings this <u>pro se</u> action pursuant to 42 U.S.C. § 1983 against the City of New York, the Commissioner and several employees of the New York City Administration for Children's Services ("ACS"), and numerous officers of the New York City Police Department ("NYPC"). Plaintiff seeks to hold defendants liable for alleged violations of his federal constitutional rights during searches of his Brooklyn residence on July 16 and 17, 2008, and his arrest on August 13, 2008. Defendants have moved for summary judgment. For the reasons explained below, their motion is granted.

1

## BACKGROUND[1]

In March 2008, P.S. 3 contacted the New York State Central Registry to report that plaintiff's nine-year-old daughter had, thus far in the school year, missed twenty-three days of school and arrived late seventy-four times without reasonable excuse. Defs.' Local Rule 56.1 Statement of Material Facts ("56.1 Stmt.") ¶ 1. This information was conveyed to ACS Child Protective Specialist Mtonya Fletcher, who corroborated the absences with the school and learned that the school's efforts to speak with the child's parents had been unsuccessful. As part of her investigation, Ms. Fletcher also learned that plaintiff's three other children similarly had an excessive number of late arrivals to school. Id. ¶¶ 1-3. On March 25, 2008, Ms. Fletcher went to plaintiff's residence at 257 Putnam Avenue in Brooklyn, New York (the "Putnam Avenue residence"), to see the children and speak with their parents, but she was advised by plaintiff that she should "sue" him if ACS wanted to see the family. Id. ¶¶ 4-5. Ms. Fletcher thereafter attempted to speak to plaintiff's children at their schools on several later dates, including March 31, April 10, April 16, and June 17, 2008. Id. ¶ 7. She also returned to the Putnam Avenue residence on June 25 and July 8, 2008, and left notices of attempts to engage when no one responded to her knocks. Id. ¶ 12. Over the same time period, she left telephone messages for plaintiff and the children's mother, none of which were returned. Id. ¶¶ 10-11.

On April 30, 2008, in the middle of Ms. Fletcher's failed attempts to speak with the family, ACS filed petitions alleging child neglect as to plaintiff's four children. Id. ¶ 6. In an addendum attached to each of the four petitions, Ms. Fletcher laid out the children's school attendance problems and the unsuccessful attempts that had been made to engage the parents,

---

[1] Unless otherwise noted, the parties do not contest the following facts. Plaintiff has failed to submit any response or documents in opposition to defendants' motion for summary judgment, and the allegations of his complaint are largely conclusory or unclear. As such, the facts are principally drawn from Defendants' Local Rule 56.1 Statement of Material Facts and the documents submitted in support thereof.

who had refused access to the children and hung up the telephone when ACS called. Decl. of Mtonya Fletcher ("Fletcher Decl."), Ex. A at D00048, D00052, D00056, D00060. The addendum stated that the Fleming parents "fail to exercise a minimum degree of care in providing their children with adequate education" in accordance with New York law. Id.

ACS's filing of the petitions commenced proceedings in Kings County Family Court ("Family Court"), in the consolidated case of Matter of Fleming Children v. Michael Fleming et al., No. NN-68970900/08. 56.1 Stmt. ¶ 14. At a July 16, 2008 hearing in the case, ACS applied for and received an Order on Application for Access to Children and/or Home ("Entry Order"). Id. ¶ 14. The Entry Order contained the court's findings that there was probable cause to believe that abused or neglected children may be located at the Putnam Avenue premises. Fletcher Decl., Ex. C. It ordered that the Fleming children's parents "permit the child protective investigator to enter the home immediately at any hour in order to determine whether an abused or neglected child or children are present and to conduct a home study to evaluate the home environment of the children." Id. It further provided that the ACS caseworker accompanied by police "shall enter the home of [plaintiff] to investigate possible safety concerns regarding the children." Id. Plaintiff was present at the hearing and objected the Family Court's jurisdiction. Id., Ex. D.

On the same day of the hearing, at approximately 5:35 p.m., Ms. Fletcher and two other ACS employees went to the Putnam Avenue residence with a copy of the Entry Order. 56.1 Stmt. ¶ 15. Plaintiff's mother was present at the home but did not open the door, and the ACS employees left. Id. ¶¶ 16-19. At approximately 9:50 p.m. that night, ACS Child Protective Specialist Michelle Mullings returned to the premises, where she was met by several police officers. Id. ¶¶ 20-21. While they were outside the residence, plaintiff arrived from the street.

Id. ¶¶ 22-24. Plaintiff was shown a copy of the Entry Order but refused to allow anyone to enter. Id. ¶ 25. Plaintiff stated that his children had not lived at the residence for "months" but refused to share their current location. Id. ¶ 26. Plaintiff eventually agreed to allow Ms. Mullings and the officers into the premises' upstairs unit,[2] which Ms. Mullings observed was in terrible condition and would have posed a hazard to children, had they been present. Id. ¶¶ 27-33. Following this visual search, Ms. Mullings and the officers left. Id. ¶ 34.

On the morning of July 17, 2008, ACS directed its employees to return to the Putnam Avenue premises "to see if the children are now home." Id. ¶ 35; Decl. of Counsel in Support of Defs.' Mot. for Summary Judgment, Ex. B at D00158. At approximately 10:40 a.m., three ACS employees arrived at the residence, where they found a Con Edison employee in the front yard who indicated that he had a scheduled appointment to read the meter. 56.1 Stmt. ¶ 36-38. The ACS employees knocked on the door and windows of the premises, and a woman identifying herself as "Sherise" answered the door. Id. ¶¶ 39-40, 43. The ACS workers explained that they had an Entry Order and that their purpose was to observe the children. Id. ¶ 41. The woman refused to allow them to enter unless they called the police. Id. ¶¶ 42, 44. The police were called, two police officers arrived on the scene, and Sherise permitted them to enter. Id. ¶¶ 45-47. The residence was dirty and in poor condition. Id. ¶¶ 48-52. One of the individuals in the house said it was being renovated, and the inhabitants refused to let ACS take pictures. Id. ¶¶ 48, 52. A woman identifying herself as the children's grandmother ordered the ACS employees and police officers to leave the residence, which they did. Id. ¶ 53.

On August 12, 2008, Detective John Tosi of the Brooklyn North Warrant Squad received a Warrant of Arrest, issued by the Family Court on August 7, 2008, directing, inter alia, that

---

[2] Plaintiff asserts that he initially refused to grant the officers permission to search the residence without a warrant but relented when they threatened to arrest him if he failed to comply with their demand to search the premises. Third Am. Compl. ¶¶ 45-46.

plaintiff be arrested and that he and his children be brought before the Family Court. Id. ¶¶ 54, 56. The NYPD's Warrant Database indicated that the Family Court had also issued an arrest warrant for the children's mother. Id. ¶ 57. With his partner, Sergeant Annemarie Murphy, Detective Tosi conducted an investigation into the warrant and learned from the Warrant Database that plaintiff had an outstanding criminal warrant on a charge of aggravated unlicensed operation of a motor vehicle in third degree. Id. ¶¶ 58, 60-61. An ACS caseworker informed the officers that the children's mother might be at a particular address in Manhattan, which they visited on August 13, 2008. Id. ¶¶ 59, 62. While the officers were at the address, plaintiff arrived on the scene. He refused to open the door to the apartment or disclose the location of his children. Id. ¶ 65. The officers contacted the Family Court and verified that the proceeding involving plaintiff's children was still active and that the court still wanted plaintiff to be brought before the court. Id. ¶ 67. The officers then arrested plaintiff and brought him to the Family Court. Id. ¶¶ 68-70. When plaintiff's Family Court appearance concluded, the officers again placed plaintiff in handcuffs and brought him to the Kings County Criminal Court, where plaintiff was brought before a judge on the aggravated unlicensed operation of a motor vehicle charge, indicated that he did not wish to plead guilty, and was remanded to Rikers Island in the custody of the Department of Corrections. Id. ¶¶

## DISCUSSION

The court liberally construes plaintiff's pro se complaint to assert § 1983 claims for unlawful search and false arrest under the Fourth and Fourteenth Amendments of the Constitution. Although plaintiff does not make explicit reference to state law in his operative complaint, the court shall construe his complaint broadly to allege the analogous state law claims

of false arrest and false imprisonment.[3] Defendants have moved for summary judgment on the grounds, inter alia, that defendants lawfully searched the Putnam Avenue premises and lawfully arrested plaintiff. As explained below, defendants are entitled to summary judgment.

## I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any

---

[3] Plaintiff's operative complaint also alleges, in conclusory fashion, violations of Article 1, Section 10 and the First, Fifth, and Sixth Amendments of the Constitution. Because the facts as alleged provide no grounds for relief under those provisions, these claims are dismissed and require no further discussion. Plaintiff's purported claims brought pursuant to 18 U.S.C. §§ 241 and 242 are also dismissed, as those federal criminal statutes provide no private right of action. See Lavien Sales v. N.Y. City Transit Authority/Manhattan, No. 08 Civ. 3420, 2011 U.S. Dist. LEXIS 99048, at *21-22 (S.D.N.Y. Aug. 26, 2011). The court also dismisses for failure to state a claim any other state law causes of action that plaintiff may seek to bring. Although he generally alleges that he and his children were harassed by an ACS caseworker who attempted to speak with them in person and by telephone, his assertions in this regard fall short of asserting any valid claim under New York law.

material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment against it, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing Anderson, 477 U.S. at 255).

## II. Unlawful Search

Under the Fourth Amendment, individuals are protected against unreasonable searches and seizures. See U.S. Const. Amend. IV. In the case of a home, reasonableness requires that the search be conducted pursuant to a warrant or meet one of the few exceptions to the warrant requirement. See Kyllo v. United States, 533, U.S. 27, 31 (2001) ("[W]ith few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no."); Payton v. New York, 445 U.S. 573, 585 (1980) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."). "In child-abuse investigations, a Family Court order is equivalent to a search warrant for Fourth Amendment purposes." Southerland v. City of New York, No. 07-4449-cv (L), 07-4450-cv (CON), 2011 U.S. App. LEXIS 26291 (2d Cir. N.Y. June 10, 2011), at *41 n.15 (citing Nicholson v. Scoppetta, 344 F.3d 154, 176 (2d Cir. 2003); Tenenbaum v. Williams, 193 F.3d 581, 602 (2d Cir. 1999)).

Defendants are entitled to summary judgment on plaintiff's unlawful search claims. Although, as plaintiff asserts in his complaint, defendants' searches of the Putnam Avenue

premises were not undertaken pursuant to a warrant, they were done so on the authority of the Entry Order. For the purposes of this inquiry, that order was the equivalent of a warrant and provided a constitutional basis for the searches. Plaintiff's unlawful search claims therefore fail as a matter of law.

To the degree that it is possible to construe plaintiff's complaint as alleging a lack of probable cause to justify a search of plaintiff's home, it is clear from the record that the Entry Order was supported by probable cause. Section 1034(2) of New York's Family Court Act provides the evidentiary standard that must be met to justify issuance of such an order. That provision required ACS, in seeking the order, to demonstrate that there was "probable cause to believe that an abused or neglected child may be found on the premises." N.Y. Fam. Ct. Act § 1034(2)(b)(i) (2008). ACS did so by submitting evidence of the children's school attendance problems[4] and plaintiff's repeated resistance to the ACS investigation, evidence that plaintiff does not contest. In its order, the Family Court also properly verified that ACS had advised the children's parents that it might seek a court order to gain access to the children and home. See id. As such, the statutory predicates for a probable cause finding were properly established.[5]

In light of the court's conclusion that plaintiff's residence was lawfully searched, the court necessarily also holds that the defendants who searched those premises are entitled to qualified immunity with regard to this claim. "The doctrine of qualified immunity protects

---

[4] The New York Family Court Act defines as a "Neglected child" a child who, inter alia, has been harmed or is in danger of being harmed because of a parent's failure to "exercise a minimum degree of care . . . in supplying the child with adequate . . . education." N. Y. Fam. Ct. Act § 1012(f)(i)(A).

[5] That the children were not found on the subject premises during the search on the evening of July 16, 2008 does not cast doubt on continued existence of probable cause for the search undertaken the following morning. The Entry Order remained valid on July 17, 2008, and the initial visit had done nothing to mitigate ACS's reasonable belief that neglected children might be found on the premises. Although plaintiff claimed during ACS's initial visit that the children no longer lived at the home, such an evasive response was consistent with plaintiff's previous resistance to the ACS investigation, and plaintiff did not reveal where the children had gone or provide information capable of independently confirming his assertion that they had moved. Cf. Southerland, 2011 U.S. App. LEXIS 26291 at *43-44 (determining that an officer had reason to know that a child was not on the premises based, inter alia, on a third-party guidance counselor's statement to that effect).

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The searches of plaintiff's residence were conducted pursuant to a facially-valid order that was the functional equivalent of a search warrant and stated that "[t]here is probable cause to believe that abused or neglected children may be located on the premises." Fletcher Decl., Ex. C at D00451. The issuance of the Entry Order "create[d] a presumption that it was objectively reasonable for the [defendants] to believe that the search was supported by probable cause' so as to render [them] qualifiedly immune from liability." Southerland, 2011 U.S. App. LEXIS 2691, at *48 (quoting Martinez v. City of Schenectady, 115 F.3d 111, 115 (2d Cir. 1997)). Plaintiff has adduced no evidence to overcome this presumption. See id.

### III. False Arrest and False Imprisonment

A claim for false arrest, whether brought pursuant to § 1983 or New York law, requires proof of the same four elements: (1) defendant intentionally confined plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Harris v. County of Nassau, 581 F.Supp.2d 351, 354-55 (E.D.N.Y. 2008); Broughton v. State, 37 N.Y.2d 451, 456 (1975). If probable cause exists at the time of arrest, the confinement is privileged. Jocks, 316 F.3d at 135. Thus, the existence of probable cause constitutes a complete defense to a false arrest claim. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999). It also precludes a false imprisonment claim. See Zanghi v. Incorporated Vill. Of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) ("[A] finding of probable cause will defeat [a New York] state tort claim[] . . . for false imprisonment.").

Probable cause to arrest exists where the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citations and internal quotation marks omitted). Evaluating whether or not there is probable cause for an arrest is an objective inquiry. See Whren v. United States, 517 U.S. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (quoting Scott v. United States, 436 U.S. 128, 138 (1978) (internal quotation marks omitted)). Where an arrest is made pursuant to a facially valid arrest warrant, the existence of probable cause is presumed. Martinetti v. Town of New Hartford Police Dep't, 12 Fed. Appx. 29, 32 (2d Cir. 2001); see Artis v. Liotard, 934 F. Supp. 101, 103 (S.D.N.Y. 1996).

Plaintiff predicates his false arrest and false imprisonment claims on two allegedly separate arrests: his arrest on August 13, 2008, in Manhattan, and his "re-arrest" later that same day in Brooklyn. Despite plaintiff's allegations to the contrary, the record establishes that plaintiff's first arrest was made pursuant to a valid arrest warrant issued by the Family Court on August 7, 2008. Decl, of John Tosi, Ex. A. As such, that arrest is presumed to be privileged; and there is no evidence of fraud, perjury, or misrepresentation or falsification of evidence capable of overcoming this presumption. See Artis, 443 U.S. at 103. The record similarly demonstrates that plaintiff's "re-arrest" was also privileged, as there was probable cause to restrain plaintiff and bring him before the Kings County Criminal Court. Plaintiff's second arrest was predicated on the discovery, in the Warrant Database, that plaintiff had an outstanding criminal warrant for a misdemeanor charge from February 14, 2006. "When an officer learns

from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person." United States v. Miller, 265 Fed. Appx. 5, 7 (2d Cir. 2008). Because Detective Tosi and Sergeant Murphy had knowledge sufficient to warrant a person of reasonable caution to believe that plaintiff had committed a crime, plaintiff's false arrest and false imprisonment claims are properly dismissed.[6]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. Because defendants are otherwise entitled to summary judgment on all claims, the court need not address their remaining, alternative arguments for the dismissal of the case. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

                                                S/Judge Ross

                                                Allyne R. Ross
                                                United States District Judge

Dated:       July 6, 2012
              Brooklyn, New York

---

[6] In the alternative, the individual defendant police officers are entitled to summary judgment on the basis of qualified immunity, as their actions did not violate any of plaintiff's clearly established statutory or constitutional rights. Pearson, 555 U.S. at 231.

SERVICE LIST:

**Plaintiff:**

Michael Fleming
257 Putnam Avenue
Brooklyn, NY 11216